## Baker v. Estridge, et al.

(Decided June 20, 1913).

## Appeal from Jackson Circuit Court.

Homestead—Abandonment—Evidence.—Where land belonging to defendant was sold under an execution, and defendant's grantee, claiming that the land was occupied by defendant and his family as a homestead, resisted a motion to award writ of possession to the purchaser at the execution sale, evidence examined and held to sustain the finding of the trial court that the homestead had not been abandoned.

W. H. CLARK for appellant.

W. E. BEGLEY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

William Pennington, charging that Elisha Estridge had alienated the affections of his wife, brought suit to recover damages. At the September term, 1911, of the Jackson Circuit Court, judgment was rendered in his favor for the sum of $1,000. Motion and grounds for new trial were filed, and at the January term of the court the motion was overruled. On January 19, 1912, an execution issued on the judgment and was levied on the land in controversy on January 21, 1912. The land was sold on March 18, 1912, and A. W. Baker became the purchaser. On March 27, 1912, the sheriff made him a deed. On January 1st, and prior to the time the motion for a new trial was overruled, Elihu Estridge, Elisha's brother, bought the land in controversy and obtained a deed therefor from Elisha and wife, which deed was duly recorded in the Jackson county Clerk's office.

After Baker obtained the sheriff's deed, he moved for a writ of possession. Elihu Estridge resisted the

motion, and asserted title to the land by virtue of the deed which he obtained from Elisha on January 1, 1912. He claims that he paid Elisha the sum of $500 for the land, and that the land was the homestead of Elisha and his family. Baker contends that the homestead was abandoned and that the conveyance to Elihu Estridge was fraudulent. On final hearing the writ of possession was denied, and Baker appeals.

According to the evidence for Baker, Elisha Estridge left his home with Carrie Pennington in the month of February, 1911. On the 8th of June, 1911, they went to Middletown, Ohio, and went to housekeeping. After remaining there about three months, they went to Illinois and lived there two months. About the middle of December Elisha said he wanted to return to see his children, and did go back to Jackson County. Carrie Pennington says that while in Ohio he said he never expected to return to his place again, but that he wanted it for his children. There is also evidence to the effect that when Elisha reached the home of his brother, Elihu, in Garrard County, he sent Elihu for his family. His wife and children came to Elihu's home about December 18, 1911. Baker's witnesses say that their household goods was sent to them prior to January 1st. The land was sold to Elihu on January 1, 1912. Elihu had a tract of land worth about $4,000, but still owed something like $2,700 on this tract of land. According to the evidence of Elihu, he went to Jackson County for Elisha's wife and children in December, 1911. They came to his house. After that time the sale was made. During the year previous, and while Elisha was gone, the land in controversy was occupied as a home by Elisha's wife and children. He went for the wife and children because Elisha wanted to see them. On January 1st, he took them to Berea. Elisha and his wife did not care to return to the home if they could make a sale of it, as they preferred to leave the old scenes. They intended, however, to return to the land if they did not sell it. Elihu offered Elisha $500 for the land, and Elisha accepted the proposition, and Elihu paid for the land. He was abundantly able to pay for the land as he was worth about $4,000. In addition to the tract of land which he owned in Garrard County, upon which there was a balance due, he had several head of livestock and other personal property. Elisha and Elihu both claim that Elisha and Elihu never had any purpose at all of abandoning his

land, and fully intended to return to his home. The only reason he did not return was because he had made the sale. The evidence further shows that the land in controversy is worth less than $1,000.

The evidence shows that the tract of land in controversy was occupied as a homestead by Elisha Estridge's wife and children up to within a few days of the sale. Manifestly, if the land was a homestead it could not be subjected to the payment of Elisha's debts, and the sale of it would not be a fraud upon his creditors.

The only question in the case is whether or not there was an abandonment of the homestead between December 18th and January 1st, the day of the sale. If Elisha and his wife and children left the homestead with no fixed purpose of returning thereto, this would constitute an abandonment. It is evident that Elihu went for Elisha's wife and children for the purpose of effecting a reconciliation between them and Elisha. When they left Elihu's residence they intended to return to the farm. The reason they did not, was because they effected a sale of the land. Elihu and Elisha both say that the sale was made and that Elihu paid Elisha for the farm. Elihu was a man of means, and though he owned something on his home farm there is nothing in the record to show that he did not have sufficient credit to obtain the $500 which he paid for the farm in question. Even if it be true that the furniture in the homestead was packed and carried away before Christmas, this fact is not on the question of abandonment. It is simply a circumstance to be considered in connection with the other facts and circumstances surrounding the case. Here the parties were absent from the homestead for only about twelve or thirteen days before the sale was effected. All the parties declare that they intended to return. Under these circumstances, we see no reason to reverse the finding of the trial court, who was of the opinion that the homestead had not been abandoned.

Judgment affirmed.